**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**J. Ashlee Albies**, OSB No, 051846
Email: ashlee@albiesstark.com
**Maya Rinta,** OSB No. 195058
Albies, Stark & Guerriero
1500 SW First Ave., Ste. 1000
Portland, OR 97201
Telephone: (503) 308-4770
Facsimile: (503) 427-9292

**Juan C. Chavez**, OSB #136428
**Franz Bruggemeier**, OSB #163533
**Amanda Lamb**, OSB #222284
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-328-3982

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VAN LOO FIDUCIARY SERVICES LLC, an Oregon Limited Liability Corporation, as personal representative of the estate of, IMMANUEAL JAQUEZ CLARK, deceased,**<br><br>Plaintiff,<br><br>vs. | Case No. 3:24-cv-430<br><br>**COMPLAINT**<br>**Civil Rights Violation**<br>**Excessive Force**<br>**(42 U.S.C. § 1983)**<br><br>**Oregon Tort Claims Act**<br>**(Or. Rev. Stat. § 30.260 *et seq*)**<br>**Wrongful Death** |

COMPLAINT - 1
(Case No. 3:24-cv-430)

**CITY OF PORTLAND, a municipal corporation, and CHRISTOPHER SATHOFF,**

Defendants.

**Jury Trial Demanded**

Plaintiff Van Loo Fiduciary Services LLC, by and through its attorneys, hereby alleges:

## NATURE OF ACTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Or. Rev. Stat. § 30.265 by the estate of Immanueal Jaquez Clark, also known as Immanueal "Manny" Clark-Johnson. In the early morning of November 19, 2022, several Portland Police Bureau ("PPB") members attempted a "felony stop" of a car that Clark was standing near. These police officers wrongly and unreasonably believed this car was involved in an attempted armed robbery about 20 minutes earlier. As soon as the police initiated the attempted "stop" of the parked, non-running car, Clark ran away. As Clark ran, Defendant Christopher Sathoff shot him in the back with an AR-15 rifle. The police then left him to lay on the concrete parking lot, writhing in pain and bleeding out, for 26 minutes before providing any medical attention. Clark eventually died in the hospital from this gunshot wound. Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and state common law. As a result of Defendants' acts and omissions, Plaintiff suffered economic and noneconomic damages, and is entitled to damages and an award of attorney's fees and costs.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331 and 1343 because the causes of action arise under 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

COMPLAINT - 2
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

3. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

## TORT CLAIM NOTICE

4. Notice of this claim to the City of Portland was provided on or about October 9, 2023.

## PARTIES

5. Clark died intestate. Van Loo Fiduciary Services LLC is an Oregon limited liability corporation. The Multnomah County Circuit Court appointed it as personal representative of the estate of Clark on February 15, 2024. *See, In the Matter of the Estate of Immanueal Jaquez Clark*, Case No. 24PB01139.

6. Immanueal Jaquez Clark was a resident of the state of Oregon at the time he was killed and all relevant times.

7. At all relevant times, Christopher Sathoff was employed as a law enforcement officer for the City of Portland, Oregon acting under color of state law. He is sued in his individual capacity.

8. The City of Portland is a municipal corporation in the State of Oregon. As a local governmental entity, the City of Portland is a person under 42 U.S.C. § 1983. At all material times, the City of Portland employed Defendant Sathoff and all other police officers referenced herein.

COMPLAINT - 3
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## GENERAL ALLEGATIONS

9. On November 19, 2022, at approximately 12:25 AM, four white men, wielding a gun, attempted a robbery of a person parked in his car at the Super Deluxe fast-food restaurant, located at SE Powell Blvd and 50th Ave.

10. At 12:25 AM, the victim of the attempted robbery called 911 and reported the robbery to police.

11. The victim told the 911 dispatcher that 3-4 white men were involved in the robbery, and they left in a sedan heading west on Powell Boulevard.

12. The victim was only able to describe the gunman as a white man wearing a ski mask and a black hoodie.

13. The victim provided no further description of any of the suspects other than that they were "definitely" white men.

14. The dispatcher relayed this information to police on the radio and via text on the police CAD system.

15. The description on the CAD of the suspects reads "3-4 SUBJS IN VEH, ALL M… ALL WM, HANDGUN… GUNMAN WEARING A SKI MASK, BLK HOODIE. NO BETTER ON OTHERS."

16. The description on the CAD of the suspect car reads "VEH—UNK COLOR SEDAN L/S WB ON POWELL."

17. Officer James Brewer was the first to respond to the robbery call. He was dispatched at 12:27 AM and arrived at the Super Deluxe within a few minutes.

18. The only "additional" information about the suspects that Brewer was able to obtain from the victim was that the gun was possibly a black semiautomatic pistol and there was

COMPLAINT - 4
(Case No. 3:24-cv-430)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

a total of four people including the driver who stayed in the car. Brewer broadcast this information at 12:38 AM.

19. Based solely on the information known to the police at this point—the suspects were four white men, one was wearing a black hoodie and ski mask, and they were driving in a sedan--neither reasonable suspicion nor probable cause existed to stop or arrest any person in connection with the attempted robbery.

20. Six minutes after the robbery call was made, at 12:31 AM, Sergeant Michael Francis was driving east on Powell Boulevard, approximately 30 blocks west of the Super Deluxe.

21. Francis saw a sedan with *three* people in it turn east onto Powell from the north side of SE 23rd Avenue. He saw the sedan initially enter the westbound lane going east, correct to the proper lane of travel, and that it was moving fast.

22. Francis attempted to follow this car. He saw the car turn south onto SE Cesar Chavez Boulevard, but then lost sight of it.

23. After Francis lost sight of the car he was following, the Portland Police Bureau's airplane came into the area to try to find it.

24. Francis informed the officers on the plane that he lost the car going southbound on SE Cesar Chavez and that he believed the car would be headed east around Woodstock.

25. The tactical flight officer in the airplane, Daniel Barnard, saw a car going *west* on SE Steele Street, south of Powell and west of SE Cesar Chavez.

26. The airplane with Barnard inside followed this car from the air to the parking lot of the Reedwood Friends Church, 2901 SE Steele Street.

27. The car parked in the back of the parking lot at 12:36 AM.

COMPLAINT - 5
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

28. At that point, Francis, along with Officer Kenneth Jackson, Sergeant Adam Speer, Officer Kayla Postula, Officer Jeff Livingston, Officer Jerry Ables, Officer Israel Holsti, and Officer Christopher Sathoff converged around the corner of SE 30th Avenue and SE Steele Street.

29. Barnard continued to monitor from the air.

30. The officers on the ground could not see the parked car from their location.

31. Barnard observed that some of the people who had been in the car had gotten out and were standing near it or walking around the parking lot.

32. Barnard told the officers on the ground that the car in the parking lot was occupied by three people.

33. Within a couple minutes of all officers arriving, at 12:39 AM, they decided to approach the car and conduct a "felony" or "high-risk" stop on the people who were inside and standing outside of the car.

34. Conducting a "high-risk" or "felony" stop requires probable cause of a crime to be constitutional under Article I, section 9, of the Oregon Constitution. Reasonable suspicion is insufficient.

35. Under the circumstances of this case, a high-risk felony stop transformed the stop into an arrest under the Fourth Amendment to the United States Constitution.

36. There was a lack of command control in concocting and executing this stop.

37. The officers failed to properly plan the stop and no clear roles were assigned to each officer before approaching it.

38. The officers had no probable cause or reasonable suspicion to believe that any person in or standing around this car was involved in the attempted robbery at the Super Deluxe.

COMPLAINT - 6
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

39. The officers had no probable cause or reasonable suspicion to believe that any person in or standing around this car was armed.

40. The officers had no probable cause or reasonable suspicion to believe that the driver of the car had committed the traffic infractions observed by Francis on Powell Boulevard because there was insufficient evidence to believe that this was even the same car Francis had seen, much less the same car in which the attempted robbery suspects had fled.

41. Jackson, Speer, Postula, Holsti, and Sathoff got into two police vehicles to approach the car.

42. Jackson and Postula were in Jackson's car with his patrol dog in the back. Speer, Holsti, and Sathoff were in Speer's car. Sathoff, armed with an assault rifle, was in the passenger seat and Holsti was in the rear passenger side seat.

43. As the two police vehicles approached the suspect car, the drivers turned on their "take down" lights, which are extremely bright forward-facing lights that illuminate the area in front of the cars and are blinding to anyone looking at the lights.

44. All five police officers got out of their cars.

45. Immanueal Clark was outside of the car near the driver's door. Damon Dubois was near the passenger's door. Both men ran north as the police were getting out of their cars. Dubois was ahead of Clark.

46. Dubois and Clark are both Black men. All of the attempted robbery suspects were white men.

47. The other two people in or near the car were a white woman and a white man.

48. Clark was unarmed as he ran from the police.

COMPLAINT - 7
(Case No. 3:24-cv-430)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

49. There were no specific, articulable facts that would have led a reasonable police officer to believe that Clark was armed as he ran from the police.

50. Clark made no threats to the police prior to or while he was running away.

51. Sathoff intentionally shot Clark in the back with an AR-15 rifle as Clark was running away.

52. Sathoff knew immediately that he had shot Clark.

53. At 12:41 AM, while one officer was broadcasting that the suspects were running, the audio recording captures Sathoff firing his AR-15 three times.

54. The bullet that hit Clark lacerated his small bowel, his mesentery, his left kidney, and his liver, then exited through his abdomen.

55. Clark dropped to the pavement, bleeding profusely and calling out for help.

56. Clark was unable to crawl or walk on his own.

57. Neighboring residents heard his cries for help and, were it not for the police presence, would have provided first aid and gotten him an ambulance.

58. The police also could hear his cries for help.

59. The police prevented would-be good Samaritans from helping Clark with his life-threatening injuries.

60. Within one minute of the shots fired broadcast, an AMR ambulance was staged nearby and ready to provide emergency medical care and transport to an emergency room of a hospital.

61. OHSU and Legacy Emmanuel are both equipped to provide the emergency medical care Clark needed and are within six miles of where he was shot.

COMPLAINT - 8
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

62. Had the ambulance and its EMTs been allowed to get to Clark, they could have provided stabilizing care immediately and transported him to either hospital and their trauma surgeons within ten minutes.

63. Had the ambulance and its EMTs been allowed to get to Clark, Clark likely would have survived the gunshot wound.

## ALLEGATIONS AGAINST THE CITY OF PORTLAND

64. PPB Directives state that PPB "is committed to … protecting human life…." "This commitment includes ensuring the welfare of members of the public, and its officers and professional staff, with an emphasis on the sanctity of life and policing with respect." "Preserving life is a fundamental duty for law enforcement."

65. Consistent with PPB's stated concern for the value of human life, PPB Directives require all members to "provide emergency medical aid to ill or injured persons…".

66. The police did not allow the ambulance to get to Clark until 1:07 AM, 25 minutes after it arrived, and 26 minutes after Clark was shot.

67. By the time Clark arrived at OHSU, there was nothing the doctors could do to save his life. Clark died two days later, at 4:38 AM on November 21, 2022.

68. The failure to provide emergency medical aid to Clark was the result of a custom and practice of the PPB.

69. On October 12, 2005, PPB officers shot Marcello Vaida but did not allow emergency medical aid for 60 minutes.

70. On July 19, 2006, PPB officers shot Jerry Goins but did not even check his vital signs for 47 minutes.

COMPLAINT - 9
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

71.     On May 22, 2007, PPB officers shot Steven Bolen but did not provide any emergency medical aid until 48 minutes later when they found that he was deceased.

72.     On May 15, 2008, PPB officers shot Derek Coady, then waited 84 minutes to approach him with a ballistics shield.

73.     On January 29, 2010, PPB officers shot Aaron Campbell but did not allow emergency medical aid to be provided for 38 minutes.

74.     On December 17, 2010, PPB officers shot Darryll Ferguson but did not allow emergency medical aid to be provided for 84 minutes.

75.     On July 28, 2012, PPB officers shot Billy Wayne Simms but did not allow emergency medical aid to be provided for an unknown extended period of time.

76.     On September 29, 2012, PPB officers shot Joshua Baker but did not allow emergency medical aid to be provided for an unknown extended period of time.

77.     On March 12, 2014, PPB officers shot Kelly Swoboda but did not allow emergency medical aid to be provided for an unknown extended period of time.

**FIRST CLAIM FOR RELIEF**

**(Excessive Force – Violation of Fourth Amendment)**

**(Against Defendant Sathoff)**

78.     Defendant Sathoff acted under color of state law when he shot Clark.

79.     As alleged above, Defendant Sathoff's use of force was objectively unreasonable under the circumstances, constituted excessive force, and was an unreasonable and unjustifiable use of deadly force.

80.     Plaintiff should be awarded his attorney fees and costs against Defendants pursuant to 42 U.S.C. §1988.

COMPLAINT - 10
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## SECOND CLAIM FOR RELIEF

### (Unreasonable Delay In Medical Care – Violation of Fourth Amendment)

### (Against the City of Portland)

81. The delay in providing medical care to Clark as described above was unreasonable.

82. The City of Portland has a custom and practice of unreasonably delaying medical care to people who are shot by PPB officers.

83. The custom and practice of the City of Portland in unreasonably delaying medical care was the moving force behind the PPB officers' on scene decision to unreasonably delay providing medical care to Clark.

84. Plaintiff should be awarded his attorney fees and costs against Defendants pursuant to 42 U.S.C. §1988.

## THIRD CLAIM FOR RELIEF

### (Wrongful Death – Or. Rev. Stat. § 30.020 *et. seq.*)

### (Against Defendant Sathoff and the City of Portland)

**Count 1: Battery – Defendant Sathoff and the City of Portland**

85. As alleged above, Defendant Sathoff's use of force was intentional.

86. As alleged above, Defendant Sathoff's use of force was unreasonable.

87. Under the Oregon Tort Claims Act, the City of Portland is liable for Defendant's Sathoff's tortious conduct occurring within the course and scope of his duties as a Portland Police Bureau member.

COMPLAINT - 11
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**Count 2: Negligence - City of Portland**

88. When Defendant Sathoff shot Clark, he took on a duty of care to provide emergency medical assistance as soon as practicable.

89. By taking control of the scene of the shooting and preventing would-be Good Samaritans from helping Clark, the other members of the PPB, all employees of the City of Portland, took on a duty of care to Clark to get him emergency medical assistance as soon as practicable.

90. Defendants violated this duty of care by failing to allow emergency medical assistance to be provided within a reasonable amount of time.

91. But for Defendants' breach of their duty to Clark, Clark would have survived his injuries.

## DAMAGES

92. As a direct and proximate result of the conduct of the Defendants, Plaintiff suffered economic and noneconomic damages, including:

   a. Medical services, burial services, and memorial services;

   b. Clark's pain and suffering in the time before medical aid was rendered and in the days before his death;

   c. Clark's loss of enjoyment of life;

   d. Compensation for Clark's loss of his civil right to be free from the use of excessive force by law enforcement;

COMPLAINT - 12
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

A. Grant Plaintiff compensatory damages against Defendants in an amount to be determined at trial;

B. Award Plaintiff reasonable costs, expenses, and attorney's fees;

C. Grant Plaintiff such further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**DATED** this 7th day of March, 2024.

By:   /s Jesse Merrithew
**Jesse Merrithew**, OSB No. 074564
**J. Ashlee Albies,** OSB No. 051846
**Maya Rinta,** OSB No. 195058
**Juan C. Chavez**, OSB No. 136428
**Franz Bruggemeier**, OSB No. 163533
**Amanda Lamb**, OSB No. 222284

**Of Attorneys for Plaintiff**

COMPLAINT - 13
(Case No. 3:24-cv-430)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092