IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VAN LOO FIDUCIARY SERVICES LLC**, an Oregon Limited Liability Corporation, as personal representative of the estate of, Immanuel Jaquez Clark, deceased,<br><br>    Plaintiff,<br><br>  v.<br><br>**CITY OF PORTLAND**, a municipal corporation; and **CHRISTOPHER SATHOFF**,<br><br>    Defendants. | Case No. 3:24-cv-00430-IM<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE** |

**IMMERGUT, District Judge.**

  Before this Court is Defendants City of Portland and Christopher Sathoff's Motions to Dismiss and Strike ("Mot."), ECF 9. Plaintiff Van Loo Fiduciary Services LLC, acting as personal representative of the estate of Immanueal Jaquez Clark, brings three claims arising out of the November 19, 2022 shooting and subsequent death of Mr. Clark. Complaint ("Compl."), ECF 1. First, a violation of the Fourth Amendment by Defendant Sathoff for his alleged use of

PAGE 1 – ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE

excessive force. Second, a violation of the Fourth Amendment by Defendant City of Portland for its alleged custom and practice of unreasonably delaying medical care to individuals shot by Portland Police Bureau ("PPB") officers, brought pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Third, a claim brought under Oregon's wrongful death statute, with one count of battery alleged against both Defendants and one count of negligence alleged against Defendant City of Portland.

Defendants move to dismiss Plaintiff's *Monell* claim against the City, arguing that the nine incidents Plaintiff alleges to support that claim are too distant in time and too factually distinct. In the alternative, Defendants move to strike paragraphs 69 through 77 of the Complaint, which allege the nine incidents for Plaintiff's *Monell* claim, reiterating the arguments raised for the motion to dismiss. As explained below, at this stage, the nine incidents alleged by Plaintiff are sufficiently factually similar to support the *Monell* claim and not so distant in time as to be irrelevant. Defendants' motions are denied.

## LEGAL STANDARDS

A motion brought under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To be entitled to a presumption of truth, a complaint's allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Off.*

PAGE 2 – ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE

*Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Under Rule 12(f), a district court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matters are those which have "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984 F.2d at 1527 (citation omitted). "Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (alteration omitted) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). The disposition of a motion to strike is within the discretion of the district court. *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224 n.4 (9th Cir. 2005). "Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008).

## BACKGROUND[1]

### A.  Facts Relating to the Death of Mr. Clark

At approximately 12:25 A.M. on November 19, 2022, "four white men, wielding a gun, attempted a robbery of a person parked in his car" outside of a fast-food restaurant located at the

---

[1] The following facts are drawn from Plaintiff's Complaint. On a motion to dismiss, this Court must accept all well-pleaded factual allegations from the Complaint as true and draw all reasonable inferences in the non-movant's favor. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

corner of Powell Boulevard and 50th Avenue in Southeast Portland, Oregon. Compl., ECF 1 ¶ 9. The victim of the attempted robbery immediately called 911 and reported the robbery to the police, telling the 911 dispatcher that three to four white men had been involved and they had left the scene in a sedan heading west on Powell Boulevard. *Id.* ¶¶ 10–11. The victim described "the gunman as a white man wearing a ski mask and a black hoodie," *id.* ¶ 12, and reiterated that the suspects "were 'definitely' white men," *id.* ¶ 13.

The 911 dispatcher relayed this information to police "on the radio and via text on the police CAD system." *Id.* ¶ 14. The CAD records show that the suspect description read, "3-4 SUBJS IN VEH, ALL M… ALL WM, HANDGUN… GUNMAN WEARING A SKI MASK, BLK HOODIE. NO BETTER ON OTHERS," *id.* ¶ 15, and the suspect vehicle description read, "VEH—UNK COLOR SEDAN L/S WB ON POWELL," *id.* ¶ 16. An officer who responded to the scene gained additional information that the weapon "was possibly a black semiautomatic pistol and there was a total of four people including the driver who stayed in the car." *Id.* ¶¶ 17, 18. The officer "broadcast this information at 12:38 AM." *Id.* ¶ 18.

Meanwhile, at 12:31 A.M., an officer who "was driving east on Powell Boulevard, approximately 30 blocks west of the" attempted robbery scene, "saw a sedan with three people in it turn east onto Powell from the north side of SE 23rd Avenue." *Id.* ¶¶ 20, 21 (emphasis omitted). The vehicle "was moving fast," and, after it turned south onto a different street, the officer "lost sight of it." *Id.* ¶¶ 21, 22.

A PPB airplane then "came into the area" to assist in the search. *Id.* ¶ 23. The officer on the ground told the officers on the plane "that he believed the car would be headed east around Woodstock." *Id.* ¶ 24. The tactical flight officer located a vehicle going west on a different street.

PAGE 4 – ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND STRIKE

*Id.* ¶ 25. The airplane followed that vehicle to the parking lot of a church, and the vehicle parked in the back of the church's parking lot at 12:36 A.M. *Id.* ¶¶ 25–27.

At this point, eight PPB officers on the ground arrived near the church, though they "could not see the parked car from their location." *Id.* ¶¶ 28, 30. The officer in the airplane "told the officers on the ground that the car in the parking lot was occupied by three people." *Id.* ¶ 32. This officer also observed that some of the individuals had gotten out of the vehicle and "were standing near it or walking around the parking lot." *Id.* ¶ 31.

At 12:39 A.M., the officers "decided to approach the car and conduct a 'felony' or 'high-risk' stop on the people who were inside and standing outside of the car." *Id.* ¶ 33. Five of the officers split into two police vehicles, and as they approached the suspect vehicle, the officers got out of their vehicles. *Id.* ¶¶ 41, 43–44. Mr. Clark, who is a Black man, was "outside of the car near the driver's door." *Id.* ¶¶ 45–46. Another individual, who is also a Black man, was near the passenger's door. *Id.* The other two individuals "in or near the car were a white woman and a white man." *Id.* ¶ 47.

Mr. Clark fled as the officers were getting out of their vehicles. *Id.* ¶ 45. Defendant Sathoff shot Mr. Clark in the back with an AR-15 rifle as Mr. Clark was running away. *Id.* ¶ 51. An audio recording from 12:41 A.M. "capture[d] [Defendant] Sathoff firing his AR-15 three times." *Id.* ¶ 53. The bullet that struck Mr. Clark "lacerated his small bowel, his mesentery, his left kidney, and his liver, then exited through his abdomen." *Id.* ¶ 54. Mr. Clark "dropped to the pavement, bleeding profusely and calling out for help." *Id.* ¶ 55.

Although within one minute of the shots-fired broadcast an ambulance "was staged nearby and ready to provide emergency medical care and transport to a hospital, the officers "did not allow the ambulance to get to [Mr.] Clark until 1:07 AM, 25 minutes after it arrived, and 26

minutes after [Mr.] Clark was shot." *Id.* ¶¶ 60, 66. By the time Mr. Clark arrived at the hospital, "there was nothing the doctors could do to save his life," and Mr. Clark "died two days later." *Id.* ¶ 67. Had the ambulance and its emergency medical technicians been allowed to reach Mr. Clark, "they could have provided stabilizing care immediately and transported him" to the hospital within ten minutes. *Id.* ¶ 62.

**B.  Facts Relating to Other Incidents**

In the Complaint, Plaintiff identifies nine occasions on which PPB officers shot an individual and then delayed providing emergency medical aid. *Id.* ¶¶ 69–77. First, on October 12, 2005, PPB officers shot Marcello Vaida but did not allow emergency medical aid for 60 minutes. *Id.* ¶ 69. Second, on July 19, 2006, PPB officers shot Jerry Goins but did not check his vital signs for 47 minutes. *Id.* ¶ 70. Third, on May 22, 2007, PPB officers shot Steven Bolen but did not provide any emergency medical aid until 48 minutes later, at which point they found that he was deceased. *Id.* ¶ 71. Fourth, on May 15, 2008, PPB officers shot Derek Coady, then waited 84 minutes to approach him. *Id.* ¶ 72. Fifth, on January 29, 2010, PPB officers shot Aaron Campbell but did not allow emergency medical aid to be provided for 38 minutes. *Id.* ¶ 73. Sixth, on December 17, 2010, PPB officers shot Darryll Ferguson but did not allow emergency medical aid to be provided for 84 minutes. *Id.* ¶ 74. Seventh, on July 28, 2012, PPB officers shot Billy Wayne Simms but did not allow emergency medical aid to be provided for an unknown extended period of time. *Id.* ¶ 75. Eighth, on September 29, 2012, PPB officers shot Joshua Baker but did not allow emergency medical aid to be provided for an unknown extended period of time. *Id.* ¶ 76. Ninth, on March 12, 2014, PPB officers shot Kelly Swoboda but did not allow emergency medical aid to be provided for an unknown extended period of time. *Id.* ¶ 77.

**DISCUSSION**

Defendants argue that Plaintiff's *Monell* claim against the City of Portland must be dismissed because it "is based on alleged events that occurred more than eight and close to 20 years before the events alleged in" the Complaint. Mot., ECF 9 at 2. In the alternative, Defendants argue, this Court should strike paragraphs 69 through 77 of the Complaint. *Id.* According to Defendants, those allegations "have no relevance to the claim brought" by Plaintiff, and their "breadth" "create[s] an unreasonable discovery burden and thereby a significant prejudice against Defendants." *Id.*

Plaintiff responds that the "series of similar incidents in which PPB shot people and left them without medical attention for an extended period of time" is directly relevant to its *Monell* claim that the City has exactly that custom and practice. Plaintiff's Response to Defendants' Motions to Dismiss and Strike ("Resp."), ECF 10 at 5. Plaintiff argues that the incidents listed in paragraphs 69 through 77 of the Complaint are not so distant "under applicable caselaw," and that the series of incidents "demonstrate how little has changed in the 19 years since the first allegation in paragraph 69." *Id.*

At this stage, construing the allegations and making all reasonable inferences in Plaintiff's favor,[2] the other incidents of delayed medical response following officer-involved shootings are not so distant in time as to the require that this Court strike those allegations or dismiss the Complaint. "Liability for improper custom may not be predicated on isolated or

---

[2] In their Reply, Defendants state that "at least two of the alleged events" in the Complaint involved individuals who "shot themselves in the head" and "are in no way similar to the events at issue" here. Defendants' Reply, ECF 11 at 4 (emphasis omitted). "In deciding whether to grant a motion to strike, the court will not look beyond the pleadings . . . ." *Williams v. Veterans Admin. Hosp. Palo Alto, Ca.*, No. C-92-20451-RMW-ENE, 1994 WL 665311, at *1 (N.D. Cal. Nov. 4, 1994). Likewise for a motion to dismiss under 12(b)(6).

sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Though there is is no per se rule for the number of incidents required to establish a policy or custom under *Monell*, "one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy [or custom], taking into account their similarity, their timing, and subsequent actions by the municipality." *J.M. by & through Rodriguez v. County of Stanislaus*, No. 1:18-CV-01034-LJO-SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018). Other district courts, confronted with this question—can incidents that are distant in time suffice to allege a custom or practice for a *Monell* claim at the motion to dismiss stage—have concluded yes, under facts similar to these.[3] Here, Plaintiff has alleged nine factually similar incidents that occurred over the course of nine

---

[3] *See Motley v. Smith*, No. 1:15-CV-00905, 2016 WL 3407658, at *9 (E.D. Cal. June 20, 2016) (concluding that the plaintiffs alleged enough instances of officers denying protection to abused women because of the women's gender, including facts predating the events alleged in the complaint by six years, to state a *Monell* claim); *Hernandez v. County of Fresno*, No. 1:22-CV-01145-ADA-EPG, 2023 WL 3177834, at *8 (E.D. Cal. May 1, 2023) (concluding that four instances spanning eight years and preceding the underlying incident in that case by seven years could not be "fairly characterized as isolated or sporadic incidents"), *report and recommendation adopted*, No. 1:22-CV-01145-ADA-EPG, 2023 WL 5951982 (E.D. Cal. Sept. 13, 2023); *Puckett v. County of Sacramento*, No. 2:22-CV-00350-KJM-DB, 2023 WL 2432919, at *8 (E.D. Cal. Mar. 9, 2023) (holding that the plaintiff had sufficiently pleaded a *Monell* claim relating to manipulation of evidence by police by "identifying 79 civil rights violations over seven years," although the plaintiff was unable to allege multiple detailed incidents with factual similarities to his own); *cf. McClain v. SBC Sheriff's Dep't*, No. ED CV 17-01178-CJC (PLA), 2018 WL 3105248, at *7 (C.D. Cal. June 21, 2018) ("[P]ointing to a random list of lawsuits against the County over a space of nearly 20 years, and without alleging facts in those other cases that are similar to the incident at issue herein, is entirely insufficient to raise a reasonable inference that the County had a custom or policy that caused any of the multiple constitutional violations alleged in the [complaint]." (emphasis omitted)); *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, No. 1:08-CV-1924 AWI SMS, 2009 WL 2982900, at *12 (E.D. Cal. Sept. 14, 2009) (concluding that a single "incident that occurred at an entirely different school between 15 and 20 years prior is hardly indicative of a custom or policy" for *Monell* liability).

years. This Court concludes that, at this stage, those incidents sufficiently allege a series of similar constitutional violations to support Plaintiff's *Monell* claim.

As for Defendants' alternative request to strike paragraphs 69 through 77, this Court likewise denies that motion. For the reasons explained above, the nine incidents as alleged by Plaintiff are sufficiently factually similar to the underlying constitutional violation, making them material and pertinent to Plaintiff's *Monell* claim. Defendants' argument that it would pose an undue burden to conduct discovery relating to each of the incidents listed in paragraphs 69 through 77 is also unavailing. As this Court has concluded, the nine incidents are not "spurious issues," *Whittlestone, Inc.*, 618 F.3d at 973, but rather the type of allegations necessary for Plaintiff's *Monell* claim. Defendants have not shown that it would be unduly burdensome in this case to conduct discovery relating to those nine incidents.

## CONCLUSION

Defendants' Motions to Dismiss and Strike, ECF 9, are DENIED.

**IT IS SO ORDERED.**

DATED this 5th day of August, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge