Carey Caldwell, OSB #093032
Deputy City Attorney
carey.caldwell@portlandoregon.gov
William W. Manlove, OSB #891607
Senior Deputy City Attorney
william.manlove@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendants*

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **VAN LOO FIDUCIARY SERVICES LLC, an Oregon Limited Liability Corporation, as personal representative of the estate of, IMMANUEAL JAQUEZ CLARK, deceased** | **3:24-cv-00430-IM** |
| **Plaintiff,** | **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT** |
| v. | |
| **CITY OF PORTLAND, a municipal corporation, and CHRISTOPHER SATHOFF** | |
| **Defendants.** | |

In accordance with Fed. R. Civ. P. 15(a)(1)(A), Defendants Christopher Sathoff ("Sathoff") and the City of Portland ("City"; collectively "Defendants") file Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint as follows:

### NATURE OF ACTION

1. Paragraph 1 of Plaintiff's Complaint is a narrative with legal conclusions to which a response is not required. Defendants admit that Officer Sathoff shot Mr. Clark-Johnson and that Mr. Clark-Johnson ultimately died. To the extent further response is required, Defendants otherwise deny the allegations in Paragraph 1.

## JURISDICTION AND VENUE

2. – 3.         Defendants admit proper jurisdiction and venue.

## TORT CLAIM NOTICE

4.              Defendant City admits proper tort claim notice.

## PARTIES

5. – 8.         Defendants admit the parties are as identified in Paragraphs 5 through 8

## GENERAL ALLEGATIONS

9. – 13.        Defendants admit that on November 19, 2022, at approximately 12:25 am, one person with a gun, identified as white by a Super Deluxe fast-food employee parked in his car at the Super Deluxe, located on SE Powell Blvd and 50th Ave., attempted a robbery of the employee. Defendants further admit that the employee relayed that there were a total of three to four individuals, including the one person who approached him with a gun. Defendants deny the employee told 911 that all suspects were white.

14. – 16.       The Bureau of Emergency Services records speak for themselves. To the extent Plaintiff mischaracterizes those records, Defendants deny.

17. – 18.       Officer Brewer's report, 22-308667, speaks for itself. Defendants specifically deny that Officer Brewer only obtained additional information related to a gun. To the extent Plaintiff otherwise mischaracterizes that record, Defendants further deny.

19.             Paragraph 19 of Plaintiff's Complaint contains conclusions, including legal conclusions, to which a response is not required. To the extent a response is required, Defendants deny.

20. – 23.       Officer Francis's reports speaks for itself. However, Officer Francis reported seeing "at least 3 heads" in the vehicle. Defendants deny Plaintiff's allegations that otherwise characterize what Officer Francis saw.

24. – 27.       Officer Barnard's report speaks for itself and Defendants admit that Plaintiff's allegations are more or less consistent with the same.

28 – 31.        Defendants admit Paragraphs 28 through 31.

32 – 33.        Defendants deny the allegations in Paragraphs 32 and 33 to the extent they allege Officer Barnard said there were only three people and officers discussed a "felony" stop.

34. – 40.        Paragraphs 34 through 40 contain legal conclusions to which a response is not required. To the extent a response is required, Defendants deny.

41. – 42.        Defendants admit the named officers were in the respective vehicles and arranged as described. Defendants otherwise deny the characterization of any weapons.

43. – 44.        Defendants admit Sergeant Speer turned on his overhead and take-down lights and the officers exited the vehicles. Defendants otherwise deny any of Plaintiff's conclusory characterizations.

45. – 48.        Defendants admit Dubois and Clark ran from the police after they were instructed to stop, that those two men are black, and that there were two white people on scene. Defendants are without sufficient knowledge to admit or deny the remaining allegations in those paragraphs and therefore deny.

49. – 50.        Paragraphs 49 and 50 contain legal conclusions to which a response is not required. To the extent a response is required, Defendants deny.

51. – 52.        Defendants admit that Officer Sathoff intentionally shot Clark and knew he shot Clark.

53.        Any recording speaks for itself. To the extent Plaintiff mischaracterizes the recording, Defendants deny.

54.        Defendants are without sufficient information to admit or deny the allegations in paragraph 54.

55. – 56.        Defendants admit that Clark fell after he was shot and did not walk or crawl afterward.

57. – 58.        Defendants admit that that those nearby could hear Clark, including neighbors and police. Defendants are otherwise without sufficient information to admit or deny

the remaining allegations in those paragraphs.

59.        Defendants admit that the police coordinated to secure the scene before allowing anybody to approach Clark.

60. – 61.        Defendants admit that AMR was staged and OHSU and Legacy Emmanuel are hospitals within miles, and that all three can provide medical care. Defendants further admit that AMR did in fact transport Clark. Defendants otherwise deny the allegations in Paragraphs 60 and 61.

62. – 63.        The allegations in Paragraphs 62 and 63 are conclusory and do not require a response. To the extent a response is required, Defendants deny.

## ALLEGATIONS AGAINTS THE CITY OF PORTLAND

64. – 65.        PPB Directives speak for themselves. Defendant City denies any characterizations that are inconsistent with the written Directives.

66.        Defendant City admits that the police worked to secure the scene before allowing ambulance staff to approach Clark and that took approximately 26 minutes.

67.        Defendant City admits that Clark passed away on November 21, 2022. Defendant City is without sufficient knowledge or information to admit the remaining allegations in Paragraph 67 and therefore denies.

68.        Paragraph 68 contains legal conclusions to which a response is not required. Nonetheless, Defendant City denies that paragraph.

69.        Defendant City admits that on or about October 12, 2005, in response to Vaida firing multiple gun shots at officers, officers returned fire, striking Vaida. Vaida ignored police commands and continued to represent a threat and it therefore took approximately 44 minutes to take him into custody. Defendant City further admits that Vaida recovered from his injuries.

70.        Defendant City admits that on or about July 19, 2006, Jerry Goins shot himself in the head and his death was determined to be a suicide. Defendant City further admits that any delay in taking Goins's pulse did not cause him injury and that instead the self-inflicted

gunshot to the head caused his death.

71.        Defendant City admits that on or about May 22, 2007, officers responded to a domestic violence call at Steven Bolen's residence. When they made entry into the home and proceeded upstairs to investigate, Steven Bolen pointed a shotgun at the officers, threatening them. Officers fired at Bolen who retreated out of sight. Officers similarly retreated from the residence and waited for SERT to deploy in support, which took approximately 48 minutes.

72.        Defendant City admits that on or about May 15, 2008, Portland Police Officers, with Vancouver Police Officers, served in a support role to federal agents serving a federal warrant on Derek Coady. When attempting to get him to surrender, Coady shot himself in the head. Upon information and belief, no officer, federal, Vancouver, or Portland, shot Coady. A SERT custody team was rapidly deployed and made contact with Coady approximately one hour later. Defendant City admits that any delay in the custody team approaching Coady did not cause him injury and that instead the self-inflicted gunshot to the head caused his death.

73.        Defendant City admits that on or about January 29, 2010, officers responded to a welfare check involving Aaron Campbell's girlfriend and children. During the interaction Campbell was believed to have a weapon and an officer shot him. It took SERT approximately 38 minutes to respond and secure the scene.

74.        Defendant City admits that on or about December 17, 2010, officers responded to a domestic issue at Darryll Ferguson's residence. Ferguson answer the door with a weapon pointed at officers and they shot him. Washington County SERT was the response team for the incident. When there was a delay in their arrival, Portland Officers decided to make entry approximately 84 minutes after the shooting.

75.        Defendant City admits that on or about July 28, 2012, officers responded to a call related to a road rage shooting. They encountered Billy Wayne Simms, who refused to comply with officer commands, dangerously drove his vehicle on the sidewalk of a convenience store and toward officers. After Simms was shot, he drove the vehicle across the street and crashed

into an apartment building. The brake lights could be seen on the vehicle, Simms was seen moving, and he still represented a threat, so officers waited for SERT to arrive to take custody.

76.           Defendant City admits that on or about September 29, 2012, officers went to a domestic disturbance call where Yesenia Cortes said she heard a gunshot from her apartment where she had left boyfriend Joshua Baker. Officers observed Baker driving away from the apartment with a rifle. Before leaving the apartment, Baker shot a neighbor in the chest with the rifle. Ultimately, he crashed his truck and got out of the vehicle holding the rifle and threatening officers. Officer shot him then instructed him to move away from the rifle. Baker refused to follow officer directives, continued to threaten the officers, and remained with the rifle. Approximately one hour later SERT deployed and was able to take Baker into custody. Baker recovered from his injuries.

77.           Defendant City admits that on or about March 12, 2014, an officer made contact with Kelly Swoboda while investigating reports of a man in a van stalking young girls. When the officer made contact, he instructed Swoboda to sit on a wall so the officer could talk to Swoboda. Swoboda acted like he was going to sit then instead pulled out a gun and shot the officer. The officer returned fire, killing Swoboda before he fell. He then called for backup and assistance. Backup arrived in rapid fashion and Swoboda was handcuffed within nine minutes of the shooting. He was determined to be deceased at that point. Medical confirmed Swoboda was deceased very shortly thereafter.

## FIRST CLAIM FOR RELIEF

### (Excessive Force – Violation of Fourth Amendment)

### (Against Defendant Sathoff)

78.           Defendants admit.

79.           This paragraph contains legal conclusions to which a response is not required. To the extent a response is required, Defendants deny.

80.           Defendants deny.

Page  6 – DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

**SECOND CLAIM FOR RELIEF**

**(Unreasonable Delay In Medical Care – Violation of Fourth Amendment)**

**(Against the City of Portland)**

81. – 84.       These paragraphs contain legal conclusions to which a response is not required. To the extent a response is required, Defendant City denies.

**THIRD CLAIM FOR RELIEF**

**(Wrongful Death – Or. Rev. Stat. § 30.020 *et. seq.*)**

**(Against Defendant Sathoff and the City of Portland)**

**Count 1: Battery – Defendant Sathoff and the City of Portland**

85.       Defendants admit Officer Sathoff's use of force was intentional.

86.       This paragraph contains legal conclusions to which a response is not required. To the extent a response is required, Defendants deny.

87.       Defendant City admits that the City is liable for the acts of its agents within the course and scope of their duties.

**Count 2: Negligence – City of Portland**

88. – 91.       These paragraphs contain legal conclusions to which a response is not required. To the extent a response is required, Defendants deny.

**DAMAGES**

92.       Defendants lack sufficient information at this time to admit or deny the nature or extent of Plaintiff's alleged damages, and therefore deny those damages.  In any event, Defendants deny that they are legally responsible for any such damages.

93.       Except as expressly admitted above, Defendants deny each and every remaining allegation of Plaintiff's Complaint, because those allegations are untrue, or because Defendants are without knowledge or information sufficient to form a belief as to the truth of those allegations at the present time. Defendants specifically deny that their actions were unreasonable or unlawful in any manner.

94.        Defendants request a jury trial.

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

95.        Plaintiff failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

(Qualified Immunity)

96.        Officer Sathoff is entitled to qualified immunity from liability under 42 USC § 1983 because he acted in good faith, and a reasonable police officer in his situation would not have known that any of their actions would violate a clearly established constitutional or federally protected right of Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

(Objective Reasonableness)

97.        Officer Sathoff's use of lethal force was objectively reasonable under the totality of the circumstances because Mr. Clark's conduct and actions created an immediate threat of death or serious bodily injury to other officers, civilians, and himself.

### FOURTH AFFIRMATIVE DEFENSE

(Justification-Common Law)

98.        Any use of control or force by Officer Sathoff or any of the City's other police officers, or time taken to secure the scene, was justified, as those actions were necessary to carry out their duties as law enforcement officers.

### FIFTH AFFIRMATIVE DEFENSE

(Justification-Oregon Statute)

99.        Any use of control or force by Officer Sathoff or any of the City's other police officers was justified, as those actions were necessary to carry out their duties as law enforcement officers, and those actions were authorized by ORS 161.205(5), ORS 161.209 and ORS 161.219(3).

## SIXTH AFFIRMATIVE DEFENSE

### (Privilege)

100.        Any use of control or force or time taken to secure the scene by Officer Sathoff or any of the City's other police officers was privileged, as those actions were necessary to carry out their duties as law enforcement officers.

## SEVENTH AFFIRMATIVE DEFENSE

### (Good Faith)

101.        Any use of control or force by Officer Sathoff or any of the City's other police officers was done in good faith.

## EIGTH AFFIRMATIVE DEFENSE

### (Good Faith)

102.        Any time taken to secure the scene to provide medical care by Officer Sathoff or any of the City's other police officers was done in good faith and in support of safety of the officers and public.

## NINTH AFFIRMATIVE DEFENSE

### (Self-Defense)

103.        Officer Sathoff was justified and privileged to use lethal force to protect himself from a reasonable belief of an immediate threat of death or serious bodily injury from Mr. Stanton.

## TENTH AFFIRMATIVE DEFENSE

### (Defense of Others)

104.        Officer Sathoff was justified and privileged to use lethal force to protect other persons from a reasonable belief of an immediate threat of death or serious bodily injury from Mr. Clark.

/ / /

/ / /

Page  9 – DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

### ELEVENTH AFFIRMATIVE DEFENSE

(Comparative Fault - ORS 31.600 – Decedent Mr. Clark)

105.          Defendants are not at fault in the action pled by Plaintiff because the death of Mr. Clark was his sole and exclusive fault. Plaintiff's injuries and resulting damages, if any, were caused, in whole or substantial part, by Mr. Clark's own criminal, reckless, and negligent actions as follows:

(a)      Fleeing from uniformed police officers;

(b)      Reaching for his belt line while fleeing;

(c)      Failing to obey the lawful commands of uniformed police officers; and

(d)      In consuming or abusing substances so as to affect his judgment and decision-making.

### TWELTH AFFIRMATIVE DEFENSE

(ORS 31.180 – Certain Felonious Conduct as Bar to Civil Action)

106.          Plaintiff's state law claims are barred by ORS 31.180, as Mr. Clark's felonious conduct was a substantial factor contributing to his death.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Oregon Tort Claims Act – ORS 30.260 *et seq*.)

107.          Plaintiff's claims are subject to all limitations, conditions, and immunities contained in Oregon's Tort Claims Act, ORS 30.260 *et seq.*

### FORTEENTH AFFIRMATIVE DEFENSE

(No Duplicative Damages)

108.          Plaintiff is not entitled to recover duplicative damages.

### FIFTEENTH AFFIRMATIVE DEFENSE

(Right to Assert Additional Affirmative Defenses)

109.          Defendants reserve the right to assert additional affirmative defenses which discovery or other investigation may determine to be appropriate.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants ask for the following relief:

A.      That judgment be entered in favor of Defendants and against Plaintiff;

B.      That Defendants be awarded their reasonable costs incurred herein; and

C.      That Defendants be awarded such other relief as the Court deems just and equitable.

DATED: August 19, 2024.

Respectfully submitted,

*/s/ Carey Caldwell*
Carey Caldwell, OSB #093032
Deputy City Attorney
carey.caldwell@portlandoregon.gov
William W. Manlove, OSB #891607
Senior Deputy City Attorney
william.manlove@portlandoregon.gov
*Of Attorneys for Defendants*